TITLE OFFICE, INC v VAN BUREN COUNTY TREASURER
TITLE OFFICE, INC v ALLEGAN COUNTY TREASURER

Docket Nos. 225376, 225377. Submitted September 11, 2001, at Lansing.
Decided January 18, 2002, at 9:30 A.M. Leave to appeal sought.

Title Office, Inc., brought an action in the Ottawa Circuit Court
against the Van Buren County Treasurer and several other county
treasurers, seeking under the Freedom of Information Act (FOIA),
MCL 15.231 *et seq.*, an order of mandamus directing the treasurers
to provide the plaintiff with electronic copies of certain property
tax records and charge the plaintiff the actual incremental cost of
reproducing the records, as provided in subsection 4(1) of the FOIA,
MCL 15.234(1), rather than at twenty-five cents a record, as the
treasurers required and as provided in the transcripts and abstracts
of records act (TARA), MCL 18.101. After the Livingston County
Treasurer, who was among those sued by Title Office, Inc., brought
an action in the Livingston Circuit Court against Title Office, Inc.,
seeking a declaration that it could charge twenty-five cents a
record as provided by the TARA for the electronic copies of property
tax records, the county treasurers in the Ottawa Circuit Court
action moved for a change of venue to the Livingston Circuit Court.
The Ottawa Circuit Court granted the motion. The Livingston Cir-
cuit Court, Stanley J. Latreille, J., consolidated the actions and sub-
sequently granted summary disposition for Title Office and ordered
the treasurers to charge Title Office no more than the actual incre-
mental cost of reproduction. The county treasurers filed two
appeals, and the appeals were consolidated.

The Court of Appeals *held*:

MCR 7.215(I)(1) constrains the Court of Appeals to follow *Oak-
land Co Treasurer v Title Office, Inc*, 245 Mich App 196 (2001), and
hold that the fees that can be charged in these cases are those that
are determined in accordance with subsection 4(1) of the FOIA
because the Legislature could not have intended for the TARA to
apply to requests for electronic copies of papers or records on file
in treasurers' offices.

1. Section 4 of the FOIA provides, in part, that the fee to be
charged for a requested public record shall be limited to actual
mailing costs and to the actual incremental cost of duplication,
except that such limitation shall not apply to public records pre-

pared under an act or statute specifically authorizing the sale of those public records to the public, or if the amount of the fee for providing a copy of the public record is otherwise specifically provided by an act or statute.

2. The TARA provides, in pertinent part, that a county treasurer shall make, upon request, a transcript of any paper or record on file in the treasurer's office and charge fees as specified in the TARA.

3. For purposes of § 4 of the FOIA, a statute specifically authorizing the sale of public records must do so explicitly. The TARA, although specifying the fees to be charged, does not explicitly provide for the sale of public records. The first exception to the FOIA fee structure (statute authorizing sale of public records) does not apply in the present cases.

4. The language of the TARA relating to transcripts of papers or records on file in treasurers' offices and the fees that can be charged for such transcripts encompasses the requests of Title Office, Inc., for electronic copies of property tax records. The second exception to the FOIA fee structure (other act or statute specifying fees for providing copies) applies in the present cases.

5. Were it not for *Oakland County Treasurer*, the trial court's decision would be reversed and the matter would be remanded for the entry of an order of summary disposition for the county treasurers.

Affirmed.

*Warner Norcross & Judd LLP* (by *Daniel R. Gravelyn* and *Andrew C. Shier*), for Title Office, Inc.

*Kreis, Enderle, Callander & Hudgins, P.C.* (by *Thomas G. King*), for Van Buren County Treasurer.

*Cohl, Stoker & Toskey, P.C.* (by *Bonnie G. Toskey* and *Richard D. McNulty*), for Allegan County Treasurer and others.

Before: O'CONNELL, P.J., and WHITE and SMOLENSKI, JJ.

SMOLENSKI, J. In this consolidated case, defendants appeal as of right from a circuit court order granting plaintiff's motion for summary disposition. Under MCR 7.215(I)(1), we are bound to follow the rule

established in *Oakland Co Treasurer v Title Office, Inc*, 245 Mich App 196; 627 NW2d 317 (2001), and therefore must affirm the circuit court's order. However, if not for the effect of MCR 7.215(I)(1), we would reverse the circuit court's order and remand for entry of summary disposition in favor of defendants. Therefore, we request that the chief judge of this Court convene a special panel to address this issue, as provided in MCR 7.215(I)(3).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Under the Michigan Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, plaintiff requested that each of the defendant county treasurers provide electronic copies of certain property tax records.[1] The county treasurers agreed to provide plaintiff with the requested electronic copies, but notified plaintiff that it would be required to pay the statutorily mandated fee of twenty-five cents a record, pursuant to the transcripts and abstracts of records act (TARA), MCL 48.101.[2] Plaintiff refused to pay the statutorily mandated fee, arguing that the FOIA required the county treasurers to provide the electronic copies for the "actual incremental cost" of reproducing the records.

---

[1] Plaintiff's requests apparently covered the entire property tax records of each county, over the span of several years.

[2] Given the voluminous records requested by plaintiff, the statutorily mandated fee would amount to a substantial sum. The Livingston County Treasurer stated, at the time plaintiff filed its request, that the statutory fee for reproduction of its records would amount to $63,750. Likewise, the fee would have reached $33,750 in Van Buren County, $17,332.25 in Allegan County, and $2,502.20 in Ionia County. However, the exact figures change as the counties continue to update their property tax records.

MCL 15.234(1).[3] The county treasurers took the position that one of the exceptions to the FOIA cost provisions applied to plaintiff's request, and that plaintiff would have to pay the fees mandated by the TARA.

Plaintiff filed suit in the circuit court, seeking a mandamus order directing the county treasurers to provide plaintiff with electronic copies of the requested records. Plaintiff also sought an order prohibiting the county treasurers from charging plaintiff the statutory fee mandated by the TARA, and requiring the county treasurers to charge plaintiff only the "actual incremental cost" of reproducing the electronic copies. Subsequently, defendant Livingston County Treasurer filed a complaint requesting a declaratory judgment that the TARA governed the cost of reproducing the electronic records requested by plaintiff. Both cases were consolidated for decision in the circuit court.[4] Plaintiff moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that none of the FOIA's exceptions applied to its record request. The circuit court agreed, granted plaintiff's motion for summary disposition, and ordered the county treasurers to provide plaintiff with the requested records for no more than the "actual incremental cost" of reproduction. Defendants appeal as of right.

---

[3] The parties do not dispute that the "actual incremental cost" of reproducing the records under MCL 15.234(1) would be far less than the fee of twenty-five cents a record set forth in MCL 48.101.

[4] Plaintiff originally filed its complaint in the Ottawa Circuit Court. The Livingston County Treasurer filed its declaratory action in the Livingston Circuit Court. In plaintiff's action, defendants moved for a change of venue to Livingston County. The Ottawa Circuit Court granted that motion, and the two cases were consolidated for decision in the Livingston Circuit Court.

II. STANDARD OF REVIEW

A motion for summary disposition brought under MCR 2.116(C)(10) tests the factual support for a plaintiff's claim. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). When deciding such a motion, courts must consider the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted or filed in the action to determine whether a genuine issue of any material fact exists to warrant a trial. *Id.* We review de novo a trial court's grant of a party's motion for summary disposition. *Id.*

Furthermore, issues of statutory interpretation involve questions of law that are subject to review de novo. *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998). The primary goal of judicial interpretation of statutes is to discern and give effect to the intent of the Legislature. *People v Morey*, 461 Mich 325; 329-330; 603 NW2d 250 (1999); *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). The rules of statutory construction merely serve as guides to assist the judiciary in determining legislative intent with a greater degree of certainty. *In re Quintero Estate*, 224 Mich App 682, 692-693; 569 NW2d 889 (1997).

> Because our judicial role precludes imposing different policy choices than those selected by the Legislature, our obligation is, by examining the statutory language, to discern the legislative intent that may reasonably be inferred from the words expressed in the statute. If the language of a statute is clear and unambiguous, the plain meaning of the statute reflects the legislative intent, and judicial construction is not permitted. We must give the words of a statute their plain and ordinary meaning. [*Herald Co v Bay*

*City*, 463 Mich 111, 117-118; 614 NW2d 873 (2000) (citations omitted).]

### III. FOIA COST PROVISIONS

Under the FOIA, all persons "are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them . . . so that they may fully participate in the democratic process." MCL 15.231(2). To that end, the FOIA contains specific guidelines regarding the fee that government officials may charge for providing copies of government records covered by the act. MCL 15.234. In the present case, the parties do not dispute that the FOIA governs defendants' obligation to provide plaintiff access to the requested property tax records. Rather, the parties dispute whether the FOIA cost provisions govern the fee that plaintiffs must pay for the records. To resolve this question, we must examine the FOIA cost provisions and their exceptions.

The FOIA provides, in pertinent part:

> (1) A public body may charge a fee for a public record search, the necessary copying of a public record for inspection, or for providing a copy of a public record. Subject to subsections (3) and (4), the fee shall be limited to actual mailing costs, and to *the actual incremental cost of duplication* or publication including labor, the cost of search, examination, review, and the deletion and separation of exempt from nonexempt information as provided in section 14. . . .
>
> (2) A public body may require at the time a request is made a good faith deposit from the person requesting the public record or series of public records, if the fee authorized under this section exceeds $50.00. The deposit shall not exceed ½ of the total fee.

(3) In calculating the cost of labor incurred in duplication and mailing and the cost of examination, review, separation, and deletion under subsection (1), a public body may not charge more than the hourly wage of the lowest paid public body employee capable of retrieving the information necessary to comply with a request under this act. Fees shall be uniform and not dependent upon the identity of the requesting person. A public body shall utilize the most economical means available for making copies of public records. A fee shall be charged for the cost of search, examination, review, and the deletion and separation of exempt from nonexempt information as provided in section 14 unless failure to charge a fee would result in unreasonably high costs to the public body because of the nature of the request in the particular instance, and the public body specifically identifies the nature of these unreasonably high costs. A public body shall establish and publish procedures and guidelines to implement this subsection.

(4) *This section does not apply to public records prepared under an act or statute specifically authorizing the sale of those public records to the public, or if the amount of the fee for providing a copy of the public record is otherwise specifically provided by an act or statute.* [MCL 15.234 (emphasis added).]

Plaintiff argues that the county treasurers must provide the requested records for the "actual incremental cost" of reproducing those records, pursuant to subsection 1 of the above statute. However, defendants argue that one or both of the exceptions provided in subsection 4 apply to the present case because another statute, the TARA, either specifically authorizes the sale of property tax records to the public or specifically provides the amount of the fee for providing a copy of the public record to the public. We conclude that the TARA does not specifically authorize the sale of public records to the public, but does specifically provide the amount of the fee for providing a copy of the public record to the public. Accordingly,

we would hold that the FOIA's cost provisions do not apply to plaintiff's request for electronic copies of property tax records.

### IV. AUTHORIZED SALE OF PUBLIC RECORDS

Defendants argue that the FOIA cost provisions do not apply in the present case because the TARA specifically authorizes the sale of property tax records to the public. We conclude that defendants' argument is incorrect and that the trial court appropriately granted plaintiff's motion with regard to this issue.[5] The TARA, provides, in pertinent part:

> (1) A county treasurer shall make upon request a transcript of any paper or record on file in the treasurer's office for the following fees:
>
> (a) For an abstract of taxes on any description of land, 25 cents for each year covered by the abstract.
>
> (b) For an abstract with statement of name and residence of taxpayers, 25 cents per year for each description of land covered by the abstract.
>
> (c) For list of state tax lands or state bids, 25 cents for each description of land on the list.
>
> (d) For 1 copy of any paper or document at the rate of 25 cents per 100 words.
>
> (e) For each certificate, 25 cents.
>
> (2) For statements in respect to the payment of taxes required by section 135 of the general property tax act, Act No. 206 of the Public Acts of 1893, as amended, being section 211.135 of the Michigan Compiled Laws, the county

---

[5] This Court's opinion in *Oakland Co, supra*, does not control our disposition of this issue. In that case, the plaintiff county treasurer admitted that the TARA does not specifically authorize the sale of public records. *Id.* at 202. Therefore, this Court did not explicitly consider the first exception to the FOIA cost provisions. This Court addressed only the second exception, i.e., whether the TARA specifically provides the amount of the fee for providing copies of the relevant public records.

treasurer shall receive 20 cents for each description of land contained in the certificate but the total amount paid shall not be less than $1.00.

(3) In no case shall any abstract, list, copy, or statement made as required by this act, be furnished for a sum less than 50 cents. [MCL 48.101.]

Defendants argue that the TARA clearly establishes a fee for the production of property tax records to members of the public and thus falls within the exception to the FOIA cost provisions as "an act or statute specifically authorizing the sale of those public records to the public." MCL 15.234(4). Defendants' argument contains a commonsense appeal: because the Legislature determined the fee that a county treasurer must charge for a copy of a public record, the Legislature obviously approved the sale of that public record to the public. However, adherence to the rules of statutory interpretation reveals that defendants' position is incorrect.

The first criterion in determining legislative intent is the specific language of the statute. *In re MCI Telecommunications Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999); *People v Borchard-Ruhland*, 460 Mich 278, 284; 597 NW2d 1 (1999). The Legislature is presumed to have intended the meaning it plainly expressed, and the statute must be enforced as written. *Nation v W D E Electric Co*, 454 Mich 489, 494; 563 NW2d 233 (1997). If the statutory language is unambiguous, judicial construction is neither necessary nor permitted. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999); *Toth v Auto-Alliance Int'l, Inc*, 246 Mich App 732, 737; 635 NW2d 62 (2001). Furthermore, in construing a statute, this Court must presume that every word has some meaning and must avoid any construction that would

render any part of a statute surplusage or nugatory. *Borchard-Ruhland, supra* at 285; *Hoste v Shanty Creek Management, Inc,* 459 Mich 561, 574; 592 NW2d 360 (1999). As far as possible, effect should be given to every phrase, clause, and word. *Sun Valley Foods, supra* at 237.

The Legislature clearly created two separate exceptions to the application of the FOIA cost provisions: (1) when a statute specifically authorizes the sale of public records, and (2) when a statute specifies the fee for providing a copy of the public record. MCL 15.234(4). If we adopted defendants' argument, then each time the second exception is satisfied, the first exception would likewise be satisfied, for each and every statute specifying the fee for providing a copy of a public record would be deemed to specifically authorize the sale of that public record. In our view, such an interpretation would render the first clause of MCL 15.234(4) meaningless. We must assume that the two clauses have separate and distinct meanings, because we must avoid a construction that would render any part of the statute surplusage or nugatory. *Borchard-Ruhland, supra* at 285. Therefore, we conclude that the TARA does not specifically authorize the sale of public records to the public, simply because the statute specifies the fee for providing a copy of those public records.[6]

Defendants' argument must also fail in light of this Court's holding in *Grebner v Clinton Charter Twp,* 216 Mich App 736; 550 NW2d 265 (1996). In that case, the plaintiff filed an FOIA request for copies of the

---

[6] Furthermore, defendants' argument would fail to recognize the distinction between selling an original public record and providing a copy of a public record.

defendants' voter registration rolls. *Id.* at 738. The defendants complied with the plaintiff's request, duplicating the voter registration rolls onto magnetic tape. *Id.* However, the defendants charged the plaintiff a flat "per name" charge, meant to defray the defendants' capital expenditure in computerizing their maintenance of public records. *Id.* The plaintiff filed suit, arguing that the FOIA permitted the defendants to charge only the "actual incremental charge" of duplicating the information onto magnetic tape. *Id.* at 739.[7] The defendants argued that the first of the exceptions to the FOIA cost provisions applied on the basis of their theory that the Michigan Election Law, MCL 168.1 *et seq.*, specifically authorized the sale of voter registration rolls. *Id.* at 742. The trial court granted summary disposition in favor of the plaintiff and ordered the defendants to refund the excess fee charged. *Id.* at 739. This Court affirmed, concluding that the Michigan Election Law did not qualify as a "statute specifically authorizing the sale" of voter registration rolls so as to fall within the exception to the FOIA cost provisions. *Id.* at 742.

The *Grebner* Court reasoned that a statute "specifically" authorizing the sale of public records does so "explicitly." *Id.* at 743. The Court cited two statutes as examples of language that "specifically" authorized the sale of public records. *Id.* at 742-743. First, the Court referenced MCL 24.259(2), which provides that "[t]he department of management and budget shall hold [individual copies of the Michigan Register] for

---

[7] While the "actual incremental charge" of providing the requested information under the FOIA was only $90, the defendants charged the plaintiff approximately $640 under the "per name" method of computing the fee. *Grebner, supra* at 738-739.

sale at a price not less than the publication and distribution costs." *Id.* at 743. Second, the Court referenced MCL 4.1204(3), which allows for "the sale of access" to legislative databases. *Id.* The *Grebner* Court concluded that the Michigan Election Law, which simply permitted the county clerks to provide copies of voter registration lists to members of the public upon "payment" of a fee, did not "specifically" authorize the sale of those public records so as to fall within the first exception to the FOIA cost provisions. *Id.* at 743-744.

Applying the *Grebner* analysis in the present case, we conclude that the TARA does not "specifically" authorize the sale of property tax records to the public. Therefore, the trial court appropriately granted plaintiff's motion for summary disposition regarding this issue.

### V. SPECIFIC FEE PROVIDED BY STATUTE

Defendants next argue that the FOIA cost provisions do not apply in the present case because the TARA specifically provides "the amount of the fee for providing a copy of the public record." We agree.

Although defendants advanced the same argument below, the trial court concluded that the TARA did not apply to plaintiff's record request. The trial court ruled:

> [T]he Court finds that the Transcripts and Abstracts of Records Act does not specifically designate the amount of the fee for providing a copy of the public record. Although the Transcripts and Abstracts of Records Act designates the amount of the fee for abstracting or transcribing a portion of the record, plaintiff did not request a transcription or an abstract. Plaintiff requested a computer tape containing

each county's property tax records. Thus, the statute does not specifically designate the amount of the fee for providing a copy of the record in the computer format requested.

Thus, the trial court's ruling hinged on its definition of the statutory term "transcript." The TARA provides that a county treasurer shall, upon request, make "a transcript of any paper or record on file in the treasurer's office," in accordance with the specified fees. MCL 48.101. Plaintiff argued, and the trial court agreed, that an electronic copy of property tax records did not qualify as a "transcript" of those records. We conclude that the trial court erred as a matter of law in reaching that conclusion.

When a statute does not define a term, we will ascribe its plain and ordinary meaning. *Western Michigan Univ Bd of Control v Michigan*, 455 Mich 531, 539; 565 NW2d 828 (1997). In the present case, the TARA does not contain a specific definition for the term "transcript." When a statute does not expressly define a term, courts may consult dictionary definitions in order to ascertain the ordinary meaning of the term. *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 470; 521 NW2d 831 (1994); *Ryant v Cleveland Twp*, 239 Mich App 430, 434; 608 NW2d 101 (2000). Therefore, we turn to the common understanding of the term "transcript" to resolve the present case. The common meaning of the term includes "something transcribed or made by transcribing," and "an exact copy or reproduction, esp[ecially] one having an official status." *Random House Webster's College Dictionary* (1992), p 1416. Further, the term has been defined to mean "that which has been transcribed," or a "copy of any kind." Black's Law Dictionary (6th ed), p 1497.

Plaintiff argues that the TARA governs only *"written documents"* and "paper copies." However, the TARA does not contain the term "written," and it does not state that a county treasurer shall make, upon request, a "paper copy" of its records. Rather, the statute applies broadly, requiring a county treasurer to make, upon request, "a transcript of any paper or record on file in the treasurer's office." MCL 48.101(1). An electronic copy of property tax records qualifies as a "transcript" of that record for purposes of the TARA. The medium on which the record is copied is of no significance. A copy is a copy, whether the information is handwritten, typed, photocopied, or electronically copied; it remains a copy, whether the information is placed onto paper, magnetic tape, or a computer disk.

Plaintiff also argues that the Legislature could not have intended the TARA to apply to electronic copies of county records because the Legislature enacted the statute in 1895, before the invention of computers.[8] However, if we accepted plaintiff's logic, then we would also be compelled to hold that the schedule of fees contained in the TARA does not properly apply to photocopies of county records, because the 1895 Legislature could not have envisioned the invention of photocopy machines. The Legislature chose to frame the statute in broad terms, applying to "any paper or record" on file in the treasurer's office. MCL 48.101. This language is certainly broad enough to include records that are not maintained on paper.

Given our conclusion that the TARA governs the fee that county treasurers must charge plaintiff for the

---

[8] See 1895 PA 161, effective August 30, 1895.

records that plaintiff requested, we would reverse the circuit court's ruling and remand for entry of summary disposition in defendants' favor. However, given this Court's decision in *Oakland Co, supra*, we are bound to reach a different result. MCR 7.215(I)(1).

### VI. *OAKLAND CO TREASURER v TITLE OFFICE, INC*

In *Oakland Co, supra* at 198, this Court considered the application of the TARA, as a potential exception to the FOIA cost provisions, regarding the defendant's request for electronic copies of the plaintiff Oakland County Treasurer's property tax records.[9] In that case, the panel did not explore the meaning of the statutory term "transcript." Rather, the panel considered the historical origins of the statute and opined that the Legislature could not have intended for the TARA to apply to requests for electronic copies:

> The Legislature enacted MCL 48.101 in 1895. 1895 PA 161. The last pertinent amendment took place in 1974, 1974 PA 141, when the Legislature raised the cost the counties could charge for copies. Clearly, the 1895 Legislature did not contemplate a charge for electronic copies when it enacted MCL 48.101. Moreover, when the Legislature amended the statute, over twenty-seven years ago, there still was no indication that it applied to electronic copies. This statute was clearly designed to compensate the county for its cost of manipulating data into certified transcripts, or abstracts. Plaintiff, in this case, would not incur the costs of certifying or making transcripts, and, therefore, the purpose of charging the statutory fees is absent. [*Oakland Co, supra* at 203.]

---

[9] The defendant in the *Oakland Co* case is the same party that appears as plaintiff in the instant case.

We disagree with the *Oakland Co* panel's conclusion, for the reasons set forth above.[10] We believe that the language of the TARA is broad enough to cover electronic copies of records kept on file in the offices of the county treasurers. Further, we believe that the TARA clearly falls within the second exception to the FOIA cost provisions, for situations where "the amount of the fee for providing a copy of the public record is otherwise specifically provided by an act or statute." MCL 15.234(4). However, despite our disagreement with the *Oakland Co* decision, we are bound to apply its holding here, pursuant to MCR 7.215(I)(1).

If free to do so, we would reverse the circuit court's decision and remand for entry of summary disposition in defendants' favor. However, under MCR 7.215(I)(1), we must affirm.

Affirmed.

O'CONNELL, P.J., concurred.

WHITE, J. I concur in the result only.

---

[10] Furthermore, the *Oakland Co* decision created an ironic dichotomy in the fee schedule that county treasurers must implement. Under that decision, a member of the public requesting a computer printout of a property tax record would be compelled to pay the mandatory fee of the TARA, while the same person requesting a computer disk or tape, containing the identical information, would not.